# Joynes to use, Appellant *v.* Pennsylvania Railroad Company.

*Carriers—Carriers of goods—Inadequacy of facilities—Burden of proof—Railroad—Judgment non obstante veredicto—New Trial.*

1. Where an attempt is made by a carrier of goods to show adequacy of facilities under ordinary conditions and excuse failure to meet the demands made upon it in a particular instance because of extraordinary demands, a question of fact is raised which the jury alone can determine, since the law has no fixed standard for the measure of duty in such case.

2. A railroad company is bound to do all that is reasonable and use all reasonable means by increasing the number of its tracks and warehouses to accommodate its increased business, and whether it has done this in a given case is a question for the jury.

3. Where a railroad company permitted produce dealers to unload their cars in a particular yard known as the produce yard, and allowed them two free days for that purpose, and time thereafter on demurrage, a dealer whose potatoes were delayed in an outer yard until they rotted, because of a congestion in the produce yard, is entitled to have a jury determine in a suit to recover damages for the detention whether the railroad company had, under all the circumstances, done all that it could to provide sufficient facilities in the produce yard; and he cannot be deprived of such a right by an instruction that if he and the other dealers helped to block the yard with their cars after the expiration of the free days, there could be no recovery.

4. In such a case where the jury rendered a verdict in favor of the plaintiff, and the court entered judgment for defendant non obstanto veredicto because the plaintiff and other dealers themselves caused the congestion in the yard, the Supreme Court reversed the judgment and awarded a venire facias de novo so as to secure a trial of the case on the issues which were properly involved.

5. When an emergency arises and more business is suddenly and unexpectedly cast upon a carrier than he is able to accommodate, unless the carrier decline to receive the excess offered, some shippers must necessarily be delayed; yet if the carrier does receive the goods without notice to the shipper of the circumstances likely to occasion delay or fail to obtain his assent, express or implied, to

the delay, he will be bound to transport the goods within a reasonable time, notwithstanding such emergency.

Argued Oct. 27, 1911. Appeal, No. 178, Oct. T., 1911, by plaintiff from judgment of C. P. No. 1, Allegheny Co., March T., 1907, No. 396, for defendant non obstante veredicto in case of H. W. Joynes to use of A. T. James v. Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for failure to deliver potatoes. Before MACFARLANE, J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff **for** $23,654.03. Subsequently the court entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Stephen Stone,* with him *William A. Stone,* for appellant.—The defendant was obliged to use reasonable diligence: Alexander v. R. R. Co., 7 Pa. Superior Ct. 183; Hoffman v. R. R. Co., 39 Pa. Superior Ct. 47; Klass Commission Co. v. R. R. Co., 80 Missouri App. 164; Goodwin v. R. R. Co., 58 Barb. 195; Rhymer v. R. R. Co., 27 Super. Ct. 345; Davenport v. R. R. Co., 10 Pa. Superior Ct. 47; Ruppel v. Ry. Co., 167 Pa. 166.

Where an unusual pressure of business arises the carrier will not be excused: Faulkner et al. v. South Pacific Railroad Company, 51 Missouri, 311; International & G. N. R. R. Co. v. Anderson, 21 S. W. Repr. 691; Illinois Central R. R. Co. v. Cobb, 64 Ill. 128.

If the appellant had a right to keep his goods in the car,—if he had a right to maintain an action for any

goods damaged in the car while held by him after the free time, then that right is sufficient to justify him in keeping his goods there, and such keeping would not excuse the appellee in this case for its failure to do its bounden duty: Anderson v. R. R. Co., 31 Pa. Super. Ct. 302.

There is not one scintilla of evidence to justify the Court in holding that the congestion was due to the delays suffered by the appellant in making sales.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* with him *James R. Miller,* for appellee.—The case is directly in line with Laughlin Bros. Co. v. Railway Co., 225 Pa. 540.

OPINION BY MR. JUSTICE STEWART, March 11, 1912:

The appeal is from a judgment entered non obstante. This character of judgment necessarily implies that the case as presented on the trial would have warranted binding instructions. We are to inquire whether this was so here. The evidence on behalf of plaintiff gave support to the following facts: The plaintiff is a produce dealer residing and doing business in the city of Pittsburgh. Being without warehouse or storage facilities of his own, he was accustomed to have all his consignments delivered to him by the defendant company at a certain yard at Twenty-first street in Pittsburgh, known as the produce yard, where all shippers of produce, conducting like business with the plaintiff, were offered facilities for selling to their customers their produce directly from the car, and for this purpose were allowed to detain, without charge, the cars carrying their shipments for forty-eight hours after their arrival. The defendant company maintained other delivery yards in Pittsburgh, but at none of them were such facilities afforded as met the requirements of consignees who expected to sell their produce directly from the car. In the early part of July, 1906, the plain-

tiff had consigned to his order at Pittsburgh a very large quantity of potatoes. While the bills of lading for this produce indicated Pittsburgh as the place of delivery, it is too clear for dispute that the contract of consignment contemplated a delivery at this produce yard. That both parties to the controversy so understood it, is abundantly established by the evidence. The cars carrying plaintiff's produce arrived without delay at the outer yard of the defendant company at Fifty-fourth street. This was not a yard for delivery, but for distribution and storage of cars. Plaintiff was permitted there to examine his potatoes, and he found them all sound and in good condition. The usual time required for the transfer of cars from Fifty-fourth street yard to the produce yard is about six hours. Instead of promptly transferring the cars loaded with plaintiff's potatoes to the produce yard for delivery there, the cars were detained at the outer yard, none of them for less than two days and some for as much as seventeen. When delivered at the produce yard it was found that the potatoes in 128 of these cars had heated and were absolutely without value in consequence. The action was for recovery of damages for the injury by the delay in delivery. The case, as thus established by plaintiff's evidence, called for a reply; for, except as the defendant company overcame it, it entitled the plaintiff to a verdict. It showed a delivery of the potatoes in good condition, that they had been utterly ruined while in custody of the carrier, and that the loss had resulted from the carrier's delay in transferring them to the appointed place of delivery. Upon this showing the burden fell upon the defendant to excuse itself for the delay which caused the loss. No defense by way of excuse was attempted, except to show a congested condition in the produce yard which prevented an earlier delivery there of plaintiff's cars. The case turns upon the sufficiency of this defense as matter of law. A fuller understanding of the actual situation

with respect to the produce yard is here necessary. The capacity of the yard is limited to the accommodation of 385 cars at any one time. As before stated, shippers of produce are allowed in this yard to hold without charge the cars containing their produce for two days after their arrival; under the printed rules and regulations of the company they are entitled to hold them longer but subject to a demurrage charge after the free period. When plaintiff's cars arrived at Fifty-fourth street yard it so happened that the produce yard was full, many of the cars there were beyond free time and were subject to demurrage; but none were in the yard that were not rightfully there. And so it is evident that when plaintiff's cars reached Fifty-fourth street yard a situation confronted the defendant company in which it was helpless to meet the demand of plaintiff and make prompt delivery of his produce, as it had undertaken to do. For this situation, who was responsible? If the defendant company, its responsibility must have resulted from a failure on its part with respect to some duty that attached in connection therewith. That a duty rested on it to provide accommodations in the produce yard for all cars it engaged to deliver there, calls for no discussion. That those they maintained in this instance were inadequate for the accommodation of the plaintiff's cars, is a fact in the case, and the one fact to which the loss must be referred. This may or may not involve failure of duty, depending entirely upon the facts in the case. Presumably it did involve such failure, and the burden was on the defendant company to justify it. Under such conditions the carrier may justify by showing that the accommodations it had provided at the produce yard were adequate for the amount of business it was there ordinarily required to handle, and that the demands made upon it in the particular instance when they proved inadequate, were unusual and extraordinary. But the law does not presume that such was the case.

The burden of showing it is upon the carrier, and when attempt is made to show adequacy of facilities under ordinary conditions, and excuse failure because of extraordinary demands, a question of fact is raised which the jury alone can determine, since the law has no fixed standard for the measure of duty in such case. "Where delay occurs in the transportation of goods in consequence of a lack of cars or other facilities, the company is liable for the delay unless it can show good cause therefor—A railroad company is bound to do all that is reasonable, and to use all reasonable means by increasing the number of its tracks and warehouses to accommodate its increased business, and whether it has done this in a given case is a question for the jury:" Illinois Central R. R. Co. v. Cobb, 64 Ill. 128. This indicates the first question of fact that necessarily arose in the present case. Had the defendant established to the satisfaction of the jury its first proposition, to wit, that the facilities it provided were adequate under ordinary conditions, still another question of fact would have arisen. Admitting the extraordinary demand made upon it in this instance, did the defendant do what could reasonably have been expected of it in warning the plaintiff of the situation that would delay the delivery of his goods? "It is the duty of a common carrier to provide sufficient facilities and means of transportation for all freight which it should reasonably expect will be offered, but it is not bound to provide in advance for extraordinary occasions, nor for an unusual influx of business which is not reasonably to be expected. When an emergency arises and more business is suddenly and unexpectedly cast upon a carrier than he is able to accommodate, unless the carrier decline to receive the excess offered, some shippers must necessarily be delayed; yet if the carrier do receive the goods without notice to the shippers of the circumstances likely to occasion delay, or fail to obtain his assent, express or implied, to the delay, he will

be bound to transport the goods within a reasonable time, notwithstanding such emergency:" Dawson v. Chicago & Alton R. R. Co., 79 Mo. 296. Quite as explicit to this point is Bussey v. Memphis etc. R. R. Co., 4 McCrary (U. S.) 405. Just what the measure of defendant's duty in this connection was in the present case, depended upon the situation and circumstances of the parties. It may be that circumstances here relieved defendant of the duty of notifying shippers, or this particular shipper, of the congestion at the produce yard. But here again, such circumstances were not to be presumed but shown, and if a question of fact arose in connection therewith, a reference to the jury would have been unavoidable. Instead of submitting to the jury these questions of fact which were directly in the case, the court submitted another, which, as we shall endeavor to point out, had no place in the controversy. In his charge the learned trial judge used this language: "The defendant company says here that Mr. Joynes helped to block the yard, helped in this congestion; that he was negligent and did not take his stuff out, and that the other produce men did the same thing. I submit that to you in two ways, and the first is, if it was the fault of the men who were in the yard there, the produce men, and not the fault of the railroad company, there can be no recovery of course. Second: If Mr. Joynes so contributed to this congestion we say, if they were all in it, the other produce men, and he so helped in this holding his goods beyond the time he should have, then he cannot recover." Now it was not pretended that the cars of the plaintiff or those of the other shippers had been detained in the produce yard with a view to produce a congestion, and make it impossible for the defendant company to introduce other cars into the yard; nor was it pretended that any of the cars had been detained for a length of time exceeding the limit allowed by the company's rules and regulations where cars are subject to demur-

rage charges. The cars that were then in the yard were there by a right which the defendant company itself recognized; otherwise, in the exercise of a clear duty resting upon it, it would have removed them elsewhere. Of course, the shippers who were holding their cars in the produce yard beyond free time could have relieved the situation by releasing their cars and making place in the yard for others. But what duty rested upon them to do this in relief of the company? They could not-be, and were not, in fault in not doing so, as long as they kept strictly within their legal rights. The charge of the court proceeded on the theory that the question was one of negligence on part of shippers, including the plaintiff, in the matter of the unloading and release of their cars; a wholly mistaken theory if in fact the shippers had the right under their contract with the company to detain their cars, and that they had such right there can be no doubt. The rules and regulations of the company were the basis of contract between the parties; they measured their reciprocal rights and obligations. Negligence to be actionable must at least be in breach of a legal duty, and it is impossible to derive any other or greater duty resting upon the shippers in this case than the duty to pay the demurrage charges under the contract. It is nothing to the point to say that under such construction of the contract between the company and shippers, that it would be in the power of the latter to create congestion in the produce yards at any time. A sufficient answer to this is that such result would in itself demonstrate that either the rules and regulations which allowed the congestion to occur, were insufficient, or that the yard facilities which had been provided for the shippers were inadequate. In either case the responsibility would rest wholly with the company, for it had determined the extent of the facilities and the rules governing their use. The case of Laughlin Bros. Co. v. Railway Co., 225 Pa 540, relied upon as supporting

the view taken by the learned trial judge, contains nothing contrary to anything we have here expressed. In that case it was the custom of the defendant company, known to all its shippers, to deliver not more than three cars at a time to any one person or firm, and to deliver additional cars only as those first delivered were emptied and released. It was there held that the shipper, having received storage in the produce yard for all the cars he was entitled to under the established rules and custom, of which he had full notice when he made his shipments, had no cause of action against the company for loss resulting from his cars being detained in an outer yard to await room in the produce yard.

We repeat, the question submitted to the jury to pass on was outside the case. On this mistaken issue the jury found for the plaintiff the sum of $23,654.03, but on a review of the whole case the learned trial judge, adhering to his view of the law, because it was conceded by plaintiff that the congestion in the produce yard was owing to the fact that many cars were being held by shippers in the produce yard under demurrage, directed judgment non obstante. This, as we have indicated, was error, and the judgment must be reversed for this reason. Since, however, the case was not tried on the issues which were properly involved, we shall enter such judgment as will afford the parties another opportunity to have the case tried according to the law and evidence.

The judgment is reversed and a venire facias de novo awarded.