# WADLEY SOUTHERN RAILWAY CO. *v.* KENT & DOWNS.

1. The court having charged the jury in the language of the Civil Code (1910), § 2729, as to the duty of a common carrier generally, it was not error not to repeat the expression "which he is able and accustomed to carry" in other portions of his charge dealing with the duty of a railroad company to furnish cars for transportation of freight without unreasonable delay.

2. A railroad company is under a duty to provide sufficient cars for transporting, without unreasonable delay, the usual and ordinary quantity of freight offered to it, or which might be ordinarily expected in its business.

3. There may be things of such an unusual character that a railroad company is not bound, under its general duty as a common carrier, to provide cars or special facilities for their transportation. But if in the ordinary course of its business it is accustomed to receïve lumber which requires cars forty feet in length for transportation, or holds itself out as a common carrier thereof, the duty to furnish cars for that purpose arises.

4. If a railroad company failed to perform its duty in regard to providing facilities for reasonably prompt transportation of freight of a kind and quantity offered to it in the usual and ordinary course of business, in a suit for damages arising therefrom the mere fact that the company expected to get cars from other railroad companies, and that they refused to let it have such cars because they had an unusual demand therefor, would not necessarily relieve the defendant company from liability.

(*a*) But the condition of business, the demand for cars, whether usual and ordinary, or unusual and extraordinary, what the defendant had done with a view of providing facilities for the usual and ordinary demands of its business, and the ability or inability to get cars at the time in question, were facts for the consideration of the jury in determining whether the defendant had complied with its duty.

5. The amount of the verdict found was not authorized by the evidence; and the case not being one in which a reviewing court can direct a modification, a reversal must result.

6. The assignments of error on omissions to charge without request were not meritorious; nor was there merit in the grounds of the motion other than those not in accord with the rulings here made.

August 21, 1916.

Action for damages. Before W. W. Larsen, judge pro hac vice. Johnson superior court. May 13, 1915.

*Saffold & Jordan* and *Faircloth & Claxton,* for plaintiff in error. *Hines & Jordan,* contra.

LUMPKIN, J. Kent & Downs brought suit against the Wadley Southern Railway Company, to recover damages for an alleged failure of its duty as a common carrier by railroad to furnish cars for the shipment of certain lumber. They recovered a verdict. The defendant moved for a new trial. The motion was overruled, and the defendant excepted.

1, 2. This suit was not predicated on any violation of a rule of the railroad commission, but upon the general duty of a railroad company as a common carrier to furnish cars. It is declared by the Civil Code (1910), § 2729: "A common carrier, holding himself out to the public as such, is bound to receive all goods and passengers offered that he is able and accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public." Section 2736 declares: "The common carrier is bound not only for the safe transportation and delivery of goods, but also that the same be done without unreasonable delay." In *Ocean Steamship Co. v. Savannah Locomotive Works & Supply Co.,* 131 *Ga.* 831 (63 S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265, 15 Ann. Cas. 1044), Presiding Justice Evans, after referring to the fact that an owner of a ship was under no obligation to provide other ships because his facilities might be inadequate to transport all goods which might be offered to him, said (p. 836): "Such a carrier does not owe to the public all the duties imposed by the law on railroad companies and similar public institutions to furnish adequate

transportation facilities for all goods which may be tendered. Railroad companies are public institutions, and are granted certain exclusive franchises and rights which naturally impose correlative duties. They are invested with the power of condemnation, by the exercise of which sovereign right they acquire an exclusive privilege to carry on their business over the highway constructed by them. They are endowed with special and unusual powers, with an express view to their rendering to the public adequate service. The conference of these unusual powers raises an obligation not only to serve the public impartially, but to serve the public efficiently. Upon them the law imposes the obligation to furnish sufficient facilities for the reasonably prompt transportation of goods tendered for carriage; and they are bound to provide sufficient cars for transporting, without unreasonable delay, the usual and ordinary quantity of freight offered to them, or which might reasonably and ordinarily be expected."

In *Southern Ry. Co.* v. *Moore,* 133 *Ga.* 806, 813 (67 S. E. 85, 26 L. R. A. (N. S.) 851), it was stated in substance that it had been said that the duty of a railroad company to provide facilities for the transportation of goods was not an absolute one; that, while the company must furnish cars sufficient to transport goods offered in the usual and ordinary course of business, it was not bound to anticipate and prepare for an extraordinary and unexpected press of business; that a plaintiff who sought to recover from a railroad company for a failure to furnish cars must aver and prove that the goods were properly offered for transportation; and that, where cars were required, there must be a reasonable demand and an offer of goods for transportation.

In *Southern Ry. Co.* v. *Atlanta Sand &c. Co.,* 135 *Ga.* 35, 54 (68 S. E. 807), it was said that it is the duty of a railroad company as a common carrier to provide cars sufficient to transport goods offered in the usual and ordinary course of business; but that it is not bound to anticipate and prepare for an exceptional and extraordinary press of business; that, in a suit for failure to furnish cars on proper demand, merely to show that a railroad company did not have enough cars to comply with the demands made upon its service, at the time when cars were ordered from it, would not suffice as a defense, as it might have been negligent in providing for the ordinary conduct of its business, and its own negligence

would not excuse it; that it would be admissible to prove that, at the time of the demand, the defendant did not have cars enough to comply therewith, that the general movement of freight throughout the country traversed by the defendant's lines of railroad was unusually large and more than was normally to have been expected, and that therefore it could not comply with the demand for cars, without fault on its part. Similar defenses have been held proper by the Supreme Court of the United States, in interstate shipments. See Houston & Texas Central R. Co. *v.* Mayes, 201 U. S. 321 (26 Sup. Ct. 491, 50 L. ed. 772).

In the present case the court charged the jury in the language of the Civil Code (1910), § 2729, as to the duty of a common carrier to receive for transportation all goods offered that it is able and accustomed to carry, upon compliance with such reasonable regulations as it may adopt for its own safety and the benefit of the public. He did not repeat the expression "that he is able and accustomed to carry" each time he referred to this duty. In this there was no error. If he fairly submitted the law, he was not compelled to repeat again and again those words. To have done so would probably have tended to confuse the jury as to the duty of furnishing facilities.

3, 4. In determining whether a failure to furnish cars for the transportation of goods offered in the usual and ordinary course of business, or as to which the company held itself out as a common carrier, was without fault on the part of the defendant, evidence of the circumstances at the time is admissible, such as the character and destination of the freight, its amount, whether the defendant had previously been carrying freight of that character, or had held itself out as a common carrier thereof, whether there was an extraordinary press of business causing what is commonly called a car famine, what cars the defendant had suitable for the purpose, and what efforts it made to furnish the cars for the shipment in question. The isolated fact that the defendant did not have cars enough to meet the demand, or the mere fact that it expected cars from other railroads, but failed to get them, would not, without more, exculpate the defendant. But these facts may be proved, and in connection with other circumstances may be sufficient to show that the defendant was not at fault.

There might be freight of such an unusual and exceptional

character that a particular railroad company would not be required to anticipate its offer for carriage and provide facilities in advance for its transportation. By way of illustration, a little railroad ten or twelve miles long running through the pine forests of South Georgia could hardly be expected to anticipate as freight and provide for the transportation of forty-two centimeter Krupp guns, or monoliths weighing many tons. But if it held itself out to the public as a common carrier of such things, or if it were accustomed to carry them in the usual and ordinary course of its business, the duty of furnishing cars for that purpose would arise. See, on the general subject, 4 Elliott, Railroads (2d ed.), §§ 1470, 1474 et seq.; 4 Ruling Case Law, §§ 148, 150; 1 Michie on Carriers, §§ 334, 341; Baker v. Boston & Maine R., 74 N. H. 100, 109 (65 Atl. 386, 12 Ann. Cas. 1072) ; New York etc. Railroad Co. v. Cromwell, 98 Va. 227 (35 S. E. 444, 49 L. R. A. 462, 81 Am. St. R. 722).

In this case the plaintiffs alleged that they requested the defendant to furnish two cars forty feet in length, which were the ordinary and usual cars used in carrying lumber of the dimensions which they offered for shipment; and that it was the duty of the defendant to accept and safely carry the lumber and deliver it to its connecting carrier in the line of transportation to its destination. These allegations were denied by the defendant, which also averred, among other things, that the plaintiffs knew that it did not have such cars as were requested, that it had made arrangements for obtaining cars, and that it endeavored to get the cars, but that there was what is known as a car famine on account of greatly increased shipments, and that no cars could be had; that it did all in its power to furnish the cars, but could not do so. The charge of the court restricted the defense rather too closely, making it turn almost entirely on the quantity of the freight, without giving sufficient consideration to the contention as to its character and the requirement for its shipment of cars of a particular kind. In the same connection, he charged that the defendant would not be excused for its failure to furnish cars for transportation by the fact that it expected to get cars from other railroads, and that they refused to let it have cars because they had an unusual demand therefor. While the mere expectation of the defendant and the refusal of other railroad companies to let it have

cars because of an unusual demand upon them for cars would not alone suffice to exculpate the defendant, if it failed in its duty as to reasonably providing cars for its ordinary business, yet, when taken in connection with its context and the fact as to the order for cars of a particular length, and the reference to "western cars" in the request, this may have caused the jury to disregard facts which they might consider, with the other evidence, in determining whether the defendant's failure to furnish the cars amounted to a breach of the duty resting upon it, or whether its failure to do so was without fault on its part.

5.  The original petition alleged that the shipment comprised 25,000 feet of lumber specially sawed and to be sold at $18.50 per thousand feet, and laid the damages at $500.  An amendment was made, alleging that the lumber was worth $500, and placing the damages at $900.  The evidence of one of the plaintiffs was to the effect that they delivered to the defendant for shipment 25,000 feet of lumber at $18.50 per thousand.  The allegation was that the lumber was delivered to the defendant on January 10, 1907. A verdict in favor of the plaintiffs was rendered on September 24, 1914, for $740.  A simple calculation will show that this was more than the full value of the lumber, according to the evidence for the plaintiffs, together with seven per cent. interest thereon added.  The jury was not compelled to add interest, though they might do so, in their discretion.  If in such a case they add interest, it is not found as a separate item, but is added to the principal, so as to find damages in a single sum.  We do not know how they reached this verdict.  In a case of this character, we can not affirm the judgment with direction to write off a certain amount therefrom; but we must reverse the judgment.

6.  The other grounds of the motion for a new trial do not require a reversal for any of the reasons set out in them.

<em>Judgment reversed.    All the Justices concur.</em>