SOUTHEASTERN EXPRESS CO. v. BOWERS, INC., NO. 6.—109
S. W. (2d), 851.

Eastern Section.   Dec. 19, 1936.

Rehearing denied, 1937.

Petition for Certiorari denied by Supreme Court, Oct. 2, 1937.

W. W. Piper, of Knoxville, for plaintiff in error.
J. C. Thomason, of Knoxville, for defendant in error.

McAMIS, J., This is an action for damages alleged to have resulted from the negligent delay of a shipment of hats consigned by Bowers, Inc., plaintiff below, to J. Silverman & Bros., at New York City. Judgment in the sum of $300 was awarded by the circuit judge, sitting without the intervention of a jury, and the defendant below, Southeastern Express Company, has appealed in error to this court. We refer to the parties by name or as plaintiff and defendant, according to their status in the circuit court.

At the time of the transaction out of which this suit arose, plaintiff Bowers, Inc., operated the American Jobbing Company in Knoxville, Tenn. The Jobbing Company had in stock a large number of size 6⅞ hats, which appear to be in demand only in foreign countries where there are people with smaller heads than in this country.

On Saturday afternoon, April 28, 1934, the American Jobbing Company received an inquiry from J. Silverman & Bros. of New York City with respect to quantities and prices of hats of the description stated to be shipped as campaign hats to South America. Prices were quoted by J. B. Alleman, an agent or employee of the Jobbing Company, and on Monday, April 30, 1934, J. Silverman & Bros. purchased 50 dozens of said hats at $6 per dozen upon condition that they be shipped to arrive in New York City on the morning of May 2, 1934, so that they could be reshipped by boat to some South American country on that date.

Upon receipt of this order, J. B. Alleman called the office of defendant at Knoxville by telephone in the usual manner with reference to shipping the hats by express so that they would arrive in

New York in time to meet the time condition of the sale. There is a dispute in the evidence as to whether such a conversation took place, but it appears that the express truck was sent to the American Jobbing Company on the afternoon of the same day, evidently in response to the telephone call, and the evidence upon this point supports the finding of the circuit judge that such a conversation in fact occurred. The competency of this evidence will be hereinafter considered.

The weight of the evidence further shows that Mr. Alleman was advised by the agent of defendant who responded to the telephone call referred to that if the shipment reached the express depot at Knoxville in time to be loaded on an express train leaving Knoxville for New York City at 9:10 p. m., it would reach its destination on or before the morning of May 2, 1934.

Without discussing the testimony in detail, we think the evidence justifies a finding that when the truckman arrived at the American Jobbing Company's place of business on the afternoon of April 30th he was notified that unless the shipment arrived at destination on May 2, 1934 plaintiff would "stand a chance" of losing the order; the substance of the conversation being that the hats were sold subject to that condition and in order that the consignee could reship them on said date. There is also evidence that similar statements were made over the telephone to some one at the express office, whose name does not appear from the evidence.

It appears without dispute that the hats, packed in large crates, arrived at the express office and were loaded on hand trucks preparatory to being loaded on the express car when the train arrived at 9:05 p. m., but that they were not loaded on that train for the reason that the train left the station before employees of defendant had time to unload incoming express and load this and other express standing on trucks ready to be loaded.

Although disputed upon the briefs, we think it is fair to infer from the evidence that by reason of this delay the hats failed to reach their destination within the required time, resulting in a loss of the sale.

The action herein is not one for breach of an alleged contract to deliver the hats within a stipulated time, and the cases cited by counsel, holding that, in the absence of a published tariff for such expedited shipments preferential agreements of this nature are invalid, are not in point. The ground of action laid in the warrant and that insisted upon by counsel for plaintiff is that defendant, with notice of the conditions of the sale and with knowledge of special damages likely to accrue as a result of delay, negligently failed to load and ship the hats within a reasonable time.

It is in evidence that, barring unusual delay in transit, if the goods had been loaded on the train leaving Knoxville at 9:10 p. m.,

they would have reached their destination on time, and it is now admitted that they were not shipped on that train.

The excuse offered that defendant was unable to do so because of an unusually large shipment of express loaded at Chattanooga is supported by evidence, and the question presented is whether defendant was absolved from liability by reason of this unusual press of business.

■ The general rule is that, in the absence of special contract, a common carrier of freight is bound to deliver the goods at their destination with all convenient dispatch; and if a delay occurs in consequence of an unusual press of business, the company having a reasonable equipment for all ordinary purposes, and the goods are carried with as much expedition as is possible under the circumstances, is not liable for damages because of the delay. East Tennessee & G. Railroad v. Nelson, 41 Tenn. (1 Cold.), 272.

The foregoing is the earliest case in this state dealing with this question, and, so far as we are advised, the rule established by it has never been changed by any case since decided. The rule in other jurisdictions is the same. See Yazoo, etc., R. Co. v. Blum, 89 Miss., 242, 42 So., 282, 11 Ann. Cas., 272, and appended notes at page 274; Joynes v. Penn. R. Co., 235 Pa., 232, 83 A., 1016, Ann. Cas., 1913D, 964, and see numerous cases cited in note at page 967.

■ There is authority for the view that where the carrier cannot handle the shipment without unusual or unreasonable delay, because of an unexpected influx of freight to its line, it may refuse to accept shipments; but if the carrier knowing the situation accepts goods for transportation it is liable for such delay unless the shipper agrees to assume the risk of delay. Marine Ins. Co. v. St. Louis, etc., R. Co. (C. C.), 41 F., 643; Thomas F. Wabash, etc., R. Co. (C. C.), 63 F., 200; Ill. Cent. R. Co., v. McClellan, 54 Ill., 58, 5 Am. Rep., 83; Ill. Cent. R. Co. v. Cobb, 64 Ill., 128; Faulkner v. South Pac. R. Co., 51 Mo., 311; Houston, etc., R. Co. v. Smith, 63 Tex., 322; Joynes v. Penn. R. Co., 235 Pa., 232, 83 A., 1016, Ann. Cas., 1913D, 964, and see notes page 967.

■ But it is also held that: Evidence merely that at the time cars were ordered the carrier did not have sufficient cars to comply with the demand is insufficient to excuse the failure to furnish cars, since the carrier may have been negligent in providing for the ordinary conduct of its business, and the rule is that it is bound to provide cars sufficient to transport goods offered in the usual and ordinary course of business, although it is not bound to anticipate and prepare for an exceptional and extraordinary press of business. So. R. Co., v. Atlanta Sand & Sup. Co., (1910), 135 Ga. 35, 68 S. E., 807.

"The isolated fact that the carrier [defendant] did not have cars enough to meet the demand, or that it expected cars from other rail-

300

roads, but failed to get them, will not, in themselves, excuse the carrier for failure to furnish cars, but these facts, in connection with other circumstances, may be sufficient to show that the carrier was not at fault." Wadley So. R. Co. v. Kent & Downs (1916), 145 Ga., 689, 89 S. E. 765, 766.

However, it is well settled by numerous cases that since the facts set up as an excuse for the delay are peculiarly within the knowledge of the carrier, the burden is on it to show every fact essential to the validity of the excuse offered. Atchison, etc., R. Co. v. Word (Tex. Civ. App.), 159 S. W., 375; Ayres v. Chicago & N. W. R. Co., 71 Wis. 372, 37 N. W., 432, 5 Am. St. Rep., 226; Hines v. Mason, 144 Ark., 244, 221 S. W., 861.

As we have seen, the inadequacy of shipping facilities is no excuse where an unusual press of business is relied upon, unless the carrier has provided reasonable facilities for all ordinary purposes (East Tennessee & G. Railroad v. Nelson, supra); and, under the principles announced in the authorities cited above, we think it necessarily follows that where plaintiff has shown an unreasonable delay the burden of proof rests upon the carrier to show that its equipment is adequate for ordinary purposes and under ordinary conditions, and that the delay occurred by reason of an unusual volume of business of which it had no notice at the time the shipment was accepted.

In this case the only evidence offered by defendant is that it had one express car on the train in question, and that when it arrived in Knoxville it was loaded with a large shipment of refrigerators consigned from Chattanooga which had to be unloaded at Knoxville before outgoing express could be loaded. The train remained at the depot in Knoxville only ten minutes, and the evidence is to the effect that when the refrigerators had been unloaded there was only time enough to load a shipment of ice cream and meat, with the result that there was no time to load plaintiff's shipment.

There is no proof that one express car and the employees provided at Knoxville to load and unload it in the brief time the train stopped there were sufficient to handle the usual volume of express with reasonable dispatch. It does not appear that any effort was made by the officials of defendant at Chattanooga to communicate with the Knoxville office to afford an opportunity to provide additional help for taking care of this unusual press of business or (if this could not be done) advise shippers of probable delay as a result thereof. This burden we think rested upon defendant, and, having failed to carry the burden of proof, it cannot escape liability upon the ground that the delay resulted from an unusual press of business.

This defense, in our opinion, may not be sustained for the further reason that not only was no notice of a probable delay given when the shipment was accepted, but it also appears, that after it

developed that it could not be or was not loaded on the 9:10 train, no notice of this fact was given plaintiff, although, according to the evidence, plaintiff had been assured that it would leave on that train. Instead, when inquiry was made by plaintiff on the following day, it was advised that the hats had gone forward as expected on said train. If timely notice of defendant's inability to load the hats on the 9:10 train had been communicated to plaintiff, the loss might have been avoided, and we think defendant, under the circumstances, was duty bound to so notify the shipper, the same as if the goods were of a perishable nature. Petersen v. Case (C. C.), 21 F., 885.

Defendant was therefore properly held liable for damages in some amount, and we now consider defendant's liability for the special damages alleged in the warrant.

In Railroad Co. v. Johnson, 116 Tenn., 624, 94 S. W., 600, as here, the shipper relied upon notice to the carrier of special circumstances entitling the shipper to special damages resulting from delay in shipment. After an extensive review of authorities, it was held in that case that in order to recover special damages the carrier must have had such notice as would give it to understand that the delay would probably result in special damages to the shipper, and that to recover special damages plaintiff must show that such damages were within the contemplation of the parties.

"The notice should be of such special matters as naturally and reasonably apprise the person to be charged of the probable consequences of its breach. In other words, the shipper must communicate to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage of such freight, or the peculiar character and value of the property carried." 10 C. J., 318, section 461.

And, if the carrier accepts the goods for transportation with full notice that the goods are sold subject to being seasonably delivered, the consignor is entitled to recover the difference between the contract price and the value of the goods when actually delivered, if by reason of unreasonable delay in transportation he loses the sale. Under these circumstances, it is said the undertaking is special and the loss and liability are general. 10 C. J., 324. Cited in the footnote is Railroad Co. v. Southern Cabinet Co., 104 Tenn., 568, 58 S. W., 303, 50 L. R. A., 729, 78 Am. St. Rep., 933, which also see.

In this case defendant had notice that, unless the goods arrived in New York City on the morning of May 2d, a loss of the sale was probable. It might be argued that no notice was given that the hats were of such peculiar size that more than the usual amount of damages would result if they were not delivered in time to meet the condition of the sale, and hence such an unusual loss was not within the contemplation of the parties. However, the right to recover special damages depends not upon the fact that the extent or amount

302

of such damages was estimated by the parties, but upon notice that such special damages might follow the breach. 10 C. J., 317.

So, in this case, we think plaintiff is entitled to recover the difference between the sale price, which appears to have been an advantageous one, and the market value of the hats when they arrived at their destination.

The sale price is definitely established, but the only evidence in the record with respect to the value of the hats when delivered is the testimony of Mr. Bowers that several months after this transaction occurred he had tried several times to sell the hats, and had been unable to get an offer of any kind. He further testified that hats of the size of these could be used only in foreign countries. There is no proof that at the time of their arrival in New York the hats were worthless and without any market value, and we find no evidence upon which to base a finding of the market value of the hats at that time. It is evident that plaintiff itself did not consider the hats of no value whatever, for several months later it filed claim with defendant for only one-half the sale price; namely, $150. Its president now states that it later developed that the hats could not be disposed of and for that reason suit was instituted for $300, the full sale price. Evidence that plaintiff had been unable to dispose of them after three or more attempts, without more, is not evidence that they had no market value. However, the court, under the present state of the record, is constrained to remand the case for an order of reference to fix the amount of damages sustained. Code section 9054.

We think evidence of a conversation with some one who answered the telephone at defendant's place of business and undertook to act for it is competent to show that defendant knew of the time condition of the sale contract, although plaintiff was unable to state who the individual was. It would be too burdensome and impractical to require persons dealing with a large company such as defendant to make an independent investigation as to the actual authority of the agent who answers its telephone in regular course of business and is thus ostensibly placed in authority to act for it.

It is shown that the truck driver issued the bill of lading and actually consummated the contract by so doing, and we are also of opinion that notice to him was notice to defendant, and hence, evidence of the conversation with him while acting for defendant was properly admitted. Chicago, etc., R. Co. v. Planters', etc., Co., 88 Ark., 77, 113 S. W., 352.

Costs of appeal will be equally divided.

On Petition to Rehear.

Counsel for the Express Company has petitioned the court for a rehearing, and has cited the case of Southeastern Express Company

v. Pastime Amusement Company, 299 U. S., 28, 57 S. Ct., 73, 81 L. Ed., 20, decided by the Supreme Court of the United States on November 9, 1936, which was not considered by this court in the decision of this case. Aside from this case we find nothing presented by the petition which was not carefully considered when the case was decided.

We find nothing in the opinion in the case now cited which sustains the position of learned counsel for the Express Company. On the other hand, it appears that the action in that case, as in this, was for damages resulting from delay alleged to have resulted from the negligence of the carrier, and the court, by implication at least, held that the shipper could recover not exceeding the declared value of the merchandise. The case was accordingly remanded for a new trial, although the court did hold that a recovery of $1,500 could not be sustained where the declared value did not exceed $50.

A further consideration of the questions presented has led us to the conclusion that we must adhere to our previous decision of this case, and the petition to rehear must therefore be overruled.

It is suggested that the court did not rule on assignment of error No. 9. It was our intention to overrule this assignment of error, and it is now so ordered.