## TEXAS MEXICAN RY. CO. v. ISBELL.

### No. 12079.

Court of Civil Appeals of Texas.
San Antonio.

April 19, 1950.

Rehearing Denied May 17, 1950.

Elmore H. Borchers, Laredo, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellant.

Ward & Brown, Corpus Christi, for appellee.

NORVELL, Justice.

H. G. Isbell, doing business as H. G. Isbell Grain Company, recovered a judgment for $2,800 against The Texas Mexican Railway Company because of alleged unlawful discrimination practiced against him in the allocation of grain cars at Robstown, Nueces County, Texas, during the week beginning July 4, 1946. It was admitted that during this period there was a shortage of railway cars suitable for transporting grain, which extended throughout the United States and severely affected the facilities available for the shipment of grain sorghums from the Robstown area. In his findings the district judge referred to sixteen shippers in the area and found that the railway company "did not allot cars during such period of shortage on a basis

of facilities of shippers for loading and their daily need for cars, but cars were allocated to each loader in the ratio that his loading prior to July 4, 1946, bore to the total loads tendered by all of the sixteen shippers during that period." The court held that the application of this "base period formula" by the carrier effected a discrimination against appellee.

The question is whether or not the railway company can be held liable for damages because it adopted a base period formula for the distribution of available cars instead of allocating them upon the basis of shipping facilities and daily need. Appellant's fourth point relating to this question is as follows:

"The court erred in rendering judgment for Plaintiff (appellee) because, it erroneously held that Defendant (appellant) railroad did not apportion the available grain cars in the Robstown area in a fair and equitable manner, said grain cars having been allocated to all shippers in the ratio of those on hand each day to the number of cars loaded and shipped by each shipper on the Defendant's line prior to the time of the freight car shortage on July 4th, 1946, and, therefore, the Plaintiff is precluded from any recovery."

When faced by a shortage of shipping facilities, such as disclosed in this case, a carrier must "act upon the rule of equality." Shortages do not excuse the extension of favors to certain shippers to the detriment of others. When a freight car shortage occurs, the duty devolves upon the carrier to propose and place into operation some equitable plan for the allocation of available cars among shippers. Houston & T. C. Ry. Co. v. Smith, 63 Tex. 322. As no statutory plan is prescribed and there being many possible bases upon which an allocation might be premised, the carrier is necessarily vested with some discretion in selecting a plan. The fact that some other and different scheme might be deemed more satisfactory to a judicial tribunal does not in itself render the carrier liable for discrimination. This necessarily must be the rule, for railroads operate within the jurisdiction of a number of coordinate courts which might differ as to the comparative suitability of various suggested plans of allocation. It would seem as a practical matter that when a plan apparently equitable and proven by experience is adopted and placed in operation, a shipper adversely affected thereby, because of some special circumstance, should be required to show that the operations under the plan resulted in inexcusable prejudice to him.

The trial judge in effect held that as the plan adopted by the railway company resulted in more cars being allocated to a shipper having approximately the same shipping facilities as appellee, an unlawful discrimination necessarily resulted. We are unable to agree with this view. Shippers in the Robstown area are served by both appellant, The Texas Mexican Railway Company, and St. Louis, Brownsville and Mexico Railway Company. The shipping season for grain in the area is of about six weeks' duration. In 1946, grain shipments in appreciable amounts began about the middle of June. The "base period" adopted by appellant and by the St. Louis, Brownsville and Mexico Railway Company for the allocation of cars during the shortage began with the grain shipping season, about June 16th, and extended to July 3d, when the shortage of cars occurred. Prior to the shortage, appellee had billed and shipped out a total of eighteen cars over appellant's lines and during this base period a total of 540 cars of grain had been billed and shipped out. Appellee's percentage of cars shipped was 3.5, and the appellant allocated the available cars daily to appellee in accordance with this percentage or ratio as long as the car shortage existed.

Facilities for grain storage in the Robstown area are limited and direct loading of cars is the general practice. In view of the maturing of the crop, the lack of adequate storage and the rise in price, occasioned by the removal of O.P.A. ceilings, the offerings of grain to those buying the same for shipping purposes were heavy. Although it appears that one or two cars allocated to one shipper were voluntarily transferred to another shipper, the general rule during the shortage was for the shippers to take all the cars they could get and

make use of them for their own purposes. The record indicates that all shippers in the area had a need for cars that exceeded the demand and that hardship resulted to all.

As above indicated, the formula of allocation predicated upon the base period which began in the middle of June and extended up to and including July 3, 1946, when the shortage of cars occurred, resulted in certain shippers receiving more cars than did appellee, despite comparative equality of shipping facilities. As it is not contended that the formula selected was not fairly applied, the difference in the number of cars allocated to certain shippers as compared to those allocated to appellee, is necessarily explained by the larger number of cars billed out and shipped by appellee's competitors during the base period. The more energetic and enterprising operator will often do more business in a smaller place than will a competitor who possesses larger facilities. Experience with shortages and rationing during the recent war years resulted in the general adoption of a base period method of distribution of scarce commodities as an equitable basis of allocation. Gallagher's Steak House v. Bowles, 2 Cir., 142 F.2d 530. In certain instances, modifications of a rule grounded upon use during a base period might be necessary, but it is not shown here that an allocation of cars based primarily upon the size and extent of shipping facilities, rather than upon use during the period immediately preceding the shortage period would result in a more equitable allocation of available cars. In supplemental findings, the trial judge particularly contrasts the number of cars delivered to the Robstown Grain Company with those allocated to appellee. Both firms possessed similar loading facilities. It appears that during the shortage appellee received seven cars, while the Robstown Grain Company received twenty-one cars. However, appellee testified that during the base period Robstown Grain Company was shipping most of its grain over the Texas Mexican railway lines, as it was repairing its Missouri Pacific, St. L. B. & M. Ry. Co., plant, while appellee was shipping over both railroads. This would account for a comparatively large allocation of cars by appellant to the Robstown Grain Company. But, as both railroads operated under the same formula, the number of cars made available to the Robstown Grain Company by the St. Louis, Brownsville and Mexico Ry. Co. during the shortage would be correspondingly less.

This is not a case of alleged deviation from an established plan of allocation which resulted in damage to appellee. His complaint is that the plan adopted effected an unlawful discrimination against him. Shortages always mean hardships and perhaps no plan devised would meet all criticisms and claims of inequality. The plan of allocation put into operation by appellant to meet the situation existing on July 4, 1946, seems fair and equitable. It is in accordance with rationing experience and will be sustained, although not based primarily upon the size and extent of the plants and facilities of shippers in the Robstown area.

We sustain appellant's fourth point and pretermit discussion of other matters mentioned in the briefs.

The judgment appealed from is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.