Lida T. Brame v. Light, Heat & Water Company of
Jackson.

[48 South. 728, 21 L. R. A. (N. S.) 468.]

Water Companies. *Negligence. Liability to customer. Cutting off
flow. Notice.*

A water company, under contract to a city to furnish water to its
inhabitants by which it had the right to cut off the flow for a
short time to make repairs, may cut off the supply from a main
in order to repair a hydrant without giving notice to its cus-
tomers, and it is not liable to a customer for damages because
his house was set on fire, in consequence of such a stoppage of
the flow of water, by an instantaneous heater, installed without
the company's knowledge.

From the circuit court of, first district, Hinds county.
Hon. Wiley H. Potter, Judge.

Mrs. Brame, appellant, was plaintiff in the court below; the
Light, Heat & Water Company of Jackson, appellee, was de-
fendant there. From a judgment in defendant's favor, plain-
tiff appealed to the supreme court. The facts are stated in the
opinion of the court.

*Harris & Willing* and *L. Brame,* for appellant.

The case of *Wilkinson v. Light, Heat & Water Company,* 78
Miss. 389, 28 South. 877, is not decisive of the questions in-
volved in the instant case. Appellant is not claiming damages
on account of the failure of the water works company to furnish
a sufficient supply of water for fire purposes. It is true that it
was held in the *Wilkinson case* that a corporation organized to
supply a city and its inhabitants with water, and which con-
tracted with the municipal authorities to supply hydrants at a
designated pressure for use by the fire department, is not liable
to the owner for the destruction of a house by fire which the
fireman were unable to extinguish for the want of adequate

water pressure. That decision was based on the fact that there was no privity of contract between the private citizen and the water works company. Plaintiff did not bring suit against defendant because of the failure to furnish an adequate water supply for fire purposes, but because the water works company, itself, set fire to plaintiff's residence, as the proximate result of its own negligence.

The contention of appellant, in short, is that the appellee, being a public service corporation, was required by law to furnish water to all residents of the city of Jackson who would pay the water rates fixed by it, and comply with its reasonable rules and regulations, and that when a consumer paid the water rate demanded by the water works company, that it owed the consumer the duty to furnish water in reasonable quantities for domestic purposes, and that it was required to discharge this duty in a reasonably prudent manner, so as not to cause any injury to its consumers, and that in the ordinary course of business in furnishing water to its customers, it was required by law to take reasonable notice of the introduction and general use of improved methods and appliances, and that it was a want of reasonable care on the part of defendant to cut off the water supply without notice to its consumers, in view of the fact that at the time the fire in question occurred, gas heaters, such as plaintiff owned, had come into such general use in the city of Jackson, that fifty or more of them were in use, and that the officers and agents of defendant knew that it was dangerous to cut off the water from such heaters while they were in use.

We deem it hardly necessary to cite authorities in support of this contention. See, however, *Coy v. Indianapolis Gas Company* (Ind.), 36 L. R. A. 525; 2 Beach, Priv. Corp. sec. 835 d; *Portland Natural Gas & Oil Co. v. State*, 135 Ind. 54; *Burke v. Water Valley*, 87 Miss. 732, 40 South. 820; *Robbins v. Bangor*, 100 Me. 496.

Especially is that true when the water works company is under contract with the municipality. We quote from 30 Am.

& Eng. Ency. Law, 426, note 5, as follows: "Obligation to furnish water to citizens, under contract with municipality, rests upon it as a public duty, and may be enforced by mandamus."

It has been repeatedly held that the water works company is liable where it has made a contract directly with plaintiff who sustains a loss. *Middlesex Water Co. v. Knappman* (N. J.), 49 L. R. A. 572; *Railroad Co. v. Meridian Water Works Co.,* 72 Fed. 227; *Paducah Lumber Co. v. Water Company,* 7 L. R. A. 77, *et seq.; Coy v. Indianapolis Gas Co.,* 36 L. R. A. 535, quoted above.

When there is no direct contract between the water works company and a citizen to furnish water in reasonable quantities, and in a reasonably prudent manner, the law implies such an obligation on the part of the water works company, upon payment of the prescribed water rates by the citizen.

Common prudence would dictate that the water works company should have given reasonable notice of its intention to cut off the water, before doing so.

In the instant case, the water was cut off right in front of appellant's house, yet no notice whatever was given to her of the intention of the water works company to cut off the supply. Appellant had a perfect right to rely upon the fact that appellee would discharge its legal duty, and would not cut off the water without giving her reasonable notice.

*Green & Green,* for appellee.

The contract counted on in the declaration, and the only contract existing under which plaintiff could claim expressly provides:

"That said company, in consideration of ten dollars . . . hereby binds and obligates itself to said city as follows: That said company will provide and lay down through the principal streets of said city, for eight linear miles, beneath the surface of the earth . . . water mains of proper size and dimen-

sions to supply all reasonable requirements of said city or its residents for water, within twelve months from the date of the execution of this contract (suspension of the work by the act of God, the public enemy, legal process or circumstances beyond the control of said company excepted), and shall have and maintain at all times (except when suspended for necessary repairs or the above excepted causes) for the full period of twenty years from the commencement of operations by its works, a flow of pure, wholesome water . . . through the said mains, to be designated by the Mayor . . . ."

The evidence shows that defendant had nothing to do with the installation of the water service on the premises, nor anything to do whatever with the character of the appliances used on the premises. When the house was constructed the superintendent of the water company, Fewell, went upon the premises to ascertain what water service it had, and the water rates applicable thereto. At that time the premises had hot water from a range, with an ordinary water back, and subsequently they substituted in the bath room, where the fire occurred, and the source of the fire, an instantaneous gas heater.

None of the officers or employes in charge of the water works knew or had any notice of the use of this instantaneous heater in plaintiff's premises.

It is to be expressly noted that there is no provision in the contract with the city by which any notice of the intention to cut off the supply for repairs, or other excepted causes, is required to be given to any one. The reason of the absence of a stipulation for notice to consumers of the intention to cut off the water in this class of contracts is that it would be practically impossible. If notice was sought to be given what kind of notice would suffice? If the duty of giving notice was imposed then the defendant company would have to give every one of its several thousand consumers along its twenty-four miles of mains actual notice of the intention to cut down a valve and stop the flow of water while repairs were being made. Publi-

cation in the newspapers would not suffice or be authorized, for there is no such stipulation in the contract, and notice by publication is only allowable when it is a statutory substitute for actual notice. Given the duty of giving notice to consumers, and this duty could only be discharged by actual notice. So under the term of the city contract, the only contract for a continuouswater supply made, the defendant company, without notice, was entitled to cut off the water supply from its mains to make repairs in the instant case.

If, as suggested, it be conceded for the sake of argument that the water company is a public service corporation, owing a public duty to all the public, then that public duty could only arise under and in pursuance of the contract with the public through the city contract, and this public service duty would come into being with express stipulations that its duty to the public was that it should keep its hydrants in repair for fire service, and that whenever repairs were necessary that the water supply should be stopped in order to make them.

Plaintiff has no cause of action arising under the contract with the city averred in its declaration, because there is no privity of contract between plaintiff, a private individual, and the defendant company under that contract.

The record of this court in *Wilkinson v. Water Company,* 78 Miss. 389, 28 South. 877, interpreted this particular contract in the suit of a private individual against the defendant, and therein it was held, page 401:

"In this case, however, we are clearly of opinion that the contract before us imposes no public duty on the part of the water company to a citizen or inhabitant for the nonperformance of which an action of tort can be maintained, and that the contract does not show, in express terms or by fair intendment, that it was made for the benefit of the citizen or inhabitant in the sense that would enable him to maintain an action thereon."

This is the interpretation of this court of this particular contract between a citizen of Jackson and this company, and in

such a suit the judgment and the questions adjudged are conclusive as *res adjudicata.*

In the later case of *Lovejoy v. Bessemer Water Works Co.,* 146 Ala. (1906) 374, 41 South. 77, the court says:

"The overwhelming weight of authority is against the right of the plaintiff to maintain this action. The reason why he may not do so is that there is a want of privity between him and the defendant which disables him either from suing for a breach of the contract or for the breach of duty growing out of the contract."

Where there is no right of action given on the contract no action of tort lies for a negligent performance of duty. *Fowler v. Athens City Water Works Co.,* 83 Ga. 218; *Thompson v. Springfield Water Co.,* 215 Pa. St. 275.

Argued orally by *R. P. Willing* and *L. Brame,* for appellant, and by *M. Green,* for appellee.

FLETCHER, J., delivered the opinion of the court.

Appellant was the owner of a handsome residence situated in the city of Jackson, and had installed therein in the bathroom a device known in this record as an "instantaneous gas heater." This heater was so arranged that it was comparatively safe as long as there was a continuous flow of water, but highly dangerous if left burning after the water supply had ceased. On a certain afternoon appellant had lighted the gas and turned on the water, and then left the bathroom for a few moments. During her absence the flow of water ceased, and as a result the house was set afire and substantial damage resulted. The cessation in the flow of water was due to the fact that the water company, in order to repair a leaking hydrant, had cut off the water along the street in front of appellant's residence, and no notice of the intention so to do had been given. The flow of water was suspended for about half an hour. It was shown on the hearing that the water company had no notice of the fact that the heater

had been installed in Mrs. Brame's residence. From a peremp-tory instruction in appellee's favor, Mrs. Brame appeals.

Several reasons are urged here in support of the action of the circuit court. It is said that the liability of the company towards its patrons must be measured by the terms and stipula-tions of the contract between the company and the city. This contract provides in effect that the water company shall at all times maintain a sufficient supply of water, except when sus-pended for necessary repairs. The contract further provides that the fire hydrants mentioned shall be kept in good order, and it is made the duty of the company to repair such hydrants forthwith, when notified that they are out of repair. It being shown in the instant case that a particular hydrant needed re-pairing, we are told that the contract with the city permitted, and, indeed, demanded, that the water should be cut off for a short time, since the hydrant could not otherwise be repaired. It is argued that the citizen, contracting with the company for water and joining his service pipe to the mains constructed by the company, has his rights determined by the contract with the city, and is therefore in no position to complain if there has been a temporary suspension of water service, due to the mak-ing of necessary repairs. On the other hand, it is said that this water company, under its franchise, contracts, and mode of operation, is a public service corporation, charged with certain obligations to the public, and especially its patrons, and that it must use all necessary and reasonable precautions, in conduct-ing its business, not to so operate it as to lead to injury; that these instantaneous heaters are in common use in the city of Jackson, of which fact the company either was or should have been informed; that the company is charged with knowledge of the fact that it will lead to disastrous conflagrations if the water is cut off; that, knowing this, notice should have been given of such intention, and the failure to do so is an actionable tort. Hence it is argued that the contract with the city is quite outside of this case.

We are not prepared to gainsay the soundness of appellant's

contention on this phase of the case; but we do say that, while the contract may not contain the full measure of appellant's rights and appellee's duties, yet it may be looked to as valuable in determining whether the company has in this case been negligent. For this contract obligates the company to keep the fire hydrants in repair and permits a suspension of the water flow for this purpose. It can, therefore, not be argued that the company was negligent in cutting off the water for thirty minutes. The wrong must consist rather in failing to notify users of the particular device here involved. This narrows the compass of the inquiry to this: Was it actionable negligence to suspend the flow without notifying Mrs. Brame? Liability for tort is predicated upon the view that the tort-feasor must be held liable for the natural consequences that will probably result from his wrongful act. Keeping this elementary truism in mind, we can see the importance of the admitted fact that the water company had no knowledge that this heater had been installed in this particular residence; for, if knowledge of the existence of such a fixture was wanting, how could the company reasonably anticipate that a temporary cessation of the water flow would lead to disastrous consequences? The only possible method of avoiding this obvious obstacle to recovery is to say that it was the duty of the water company to keep abreast with the march of modern progress, and that it must be charged with knowledge of the fact that these heaters had come into general use; that, knowing that many citizens had installed these devices, it was the duty of the water company to search out these persons and notify them of the intention to shut off the water, or that some system of signaling or other manner of giving notice should have been adopted. To our mind this view imposes too high a duty upon the company. It calls for a degree of vigilance far beyond what may be characterized as ordinary or reasonable. It would charge the company with notice of every improvement which the fruitful ingenuity of an inventive age might devise, provided it depended in any degree upon the flow of water. To hold the company liable in this case, we must con-

clude that the company might reasonably have anticipated, first, that Mrs. Brame had one of these instantaneous heaters; second, that she would undertake its operation during the particular half hour that the water was shut off; third, that it would be left unguarded while in operation; and, fourth, that the cessation in the flow would cause a fire. We think the chain of causation is too lengthy here to connect the loss with the failure to give notice.

We cannot see the relevancy of the cases cited by appellant. Reliance is had upon the case of *Coy v. Indianapolis Gas Company,* 146 Ind. 655, 46 N. E. 17, 36 L. R. A. 535. This case is authority for the proposition that a failure to supply gas is a tort; but it deals with the primary duty of the public service corporation not to breach its contract to supply in a reasonable manner its patrons with fuel, known to be for heating purposes. But here the damage resulted, not proximately through the failure of the company to supply water, but because of the interposition of an unfamiliar mechanism, the existence of which was unknown to the company. The case of *Guardian, etc. Trust Company v. Fisher,* 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367, does no more than decide that, if damages are recoverable for a failure of a water company to supply water, such damages are properly recovered in an action of tort. The somewhat familiar greenhouse cases referred to have their origin in special contracts to furnish a supply of water for particular purposes, well known to the water company. We are without direct precedent to guide us; but, applying familiar and general principles to the facts before us, we are constrained to uphold the action of the lower court.

We have not thought it necessary to discuss the question of contributory negligence, based either upon the failure of the appellant to watch the heater or upon the alleged defective construction of the vent pipe.

*Affirmed.*