[L. A. No. 13181. In Bank.—October 2, 1933.]

EDWIN J. MILLER, as Executor, etc., et al., Appellants, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES et al., Respondents.

Wier Casady and Will R. King for Appellants.

Farrand & Slosson for Respondents.

CURTIS, J.—Fred J. Etcheverry and Jessie Elizabeth Etcheverry, his wife, were the owners of a large tract of land situated in San Diego County comprising some 1800 acres. The land was encumbered with a first mortgage to secure the sum of $35,000, and a second mortgage to secure a loan of $2,000. The Etcheverrys were also indebted to other parties, among whom were Edwin J. Miller and Walter Eden, whom we will hereafter refer to as the plaintiffs or appellants. Miller and Eden had reduced their claims against the Etcheverrys to judgments in the Superior Court of the County of Los Angeles and the Municipal Courts of the City of Los Angeles. These judgments were four in number, and the total amount thereof was approximately $13,400. Certified copies of these judgments were recorded in the office of the county recorder of San Diego County. This was the condition of the affairs of the Etcheverrys in January, 1927, when they decided to refinance their indebtedness through the Pacific-Southwest Trust & Savings Bank of Los Angeles, the predecessor of the respondent Security-First National Bank of Los Angeles. Numerous conferences were held between the representative of this bank, the Etcheverrys, and plaintiffs, and a number of letters passed between the bank and plaintiffs preceding the final execution of the legal papers by means of which the Etcheverrys succeeded in refinancing their indebtedness. The bank was willing to loan the Etcheverrys $75,000 and take as security their note secured by a first lien on said real property. This sum was to be used to pay off the existing liens against said real property and other outstanding obligations of the Etcheverrys, except the amount due on the judgments in favor of plaintiffs, on which there was to be paid the sum of $2,681.77. The balance of the money was to be used in improving the property by developing water and installing a water system thereon and subdividing a portion of the land into smaller tracts for the purpose of sale. The Etcheverrys executed their note to the bank in the sum of $75,000 and to secure the same executed a grant deed of said real property to the bank. The bank in turn executed a declaration of trust naming the Etcheverrys as

beneficiaries. The Etcheverrys also executed their promissory note for $11,307.94 in favor of the plaintiffs, being the balance due them on said judgments after the payment to them of said sum of $2,681.77, and to secure the payment of said last-named note the Etcheverrys assigned to the bank in trust for plaintiffs the beneficial interest of the Etcheverrys in said trust. This assignment was accepted and ratified by plaintiffs in writing by an indorsement thereon signed by them in the following words:

"We, Walter Eden and E. J. Miller, the Payees in the above described note, do hereby agree to and do approve, ratify and confirm the foregoing Assignment and Trust, and the said Declaration of Trust in all particulars.

"Dated: January 24th, 1927.

"WALTER EDEN.
"E. J. MILLER."

On the same date, that is, on January 24, 1927, plaintiffs delivered to the bank written satisfaction of their four judgments against the Etcheverrys, which were thereafter filed for record in the office of the county recorder of the county of San Diego. Thereafter the bank paid off the liens against said real property, and other obligations of the Etcheverrys which it was agreed should be paid from said sum of $75,000, including the sum of $2,681.77 to plaintiffs. These payments approximated $49,000, leaving $26,000 in hands of the bank to be held by it and disbursed in pursuance of the declaration of trust.

The provision of the declaration of trust regarding the disposition of said sum of $75,000 is as follows:

"Whereas, said Beneficiaries have deposited with the said Trustee the proceeds of the note hereinbefore referred to to-wit: Seventy-five Thousand Dollars ($75,000.00), and said Beneficiaries have heretofore instructed, and do hereby further instruct, said Trustee to disburse said moneys approximately as follows:

(1) To pay the present loan on a portion of
    the Trust Property ...................$35,000.00
(2) To pay a second lien on 93 acres of the Trust
    Property ............................. 2,000.00
(3) To pay—(a) Existing Judgments...7,000.00
            (b) Outstanding notes.....5,000.00 12,000.00

(4) To pay for surveying a portion of the land for subdivision—410 acres..............$ 1,500.00
(5) To pay for the construction of roads for the subdivision .......................... 1,000.00
(6) To pay for installing a water system for the subdivision .......................... 5,000.00
(7) To pay for installing a pipe line from the present pumping plant from which to irrigate 210 acres of the Trust property..... 1,000.00
(8) To pay for an addition to present building upon the Trust property................ 1,000.00
(9) To be impounded for the development of 2 more wells and equipping the same to place about 400 additional acres under irrigation 16,500.00

$75,000.00''

Other portions of said declaration of trust which are pertinent to the questions involved in this action are as follows:

''The Trustee shall subscribe to such map or maps and dedicate to public use such streets and alleys shown thereon, subdividing the property hereinbefore described, or any portion thereof, into lots, as may be directed by the Beneficiaries hereunder, subject to the approval of the Trustee, but at the cost and expense of the Beneficiaries hereunder.

''It is contemplated that at the date of this Declaration of Trust four hundred ten (410) acres in section 28 of the property covered hereby shall be subdivided into 5, 10 and 20 acre parcels.''

•   •   •   •   •   •   •   •   •   •   •

''If the sales organization selected by the Beneficiaries hereunder have not produced sufficient sales to satisfy the Trustee, the Trustee reserves the right in its sole discretion, so long as the Beneficiaries are indebted to the Payee hereunder, to cancel any such Agency Appointment and to appoint another Agent or Agents in lieu thereof to sell the property, and in its sole discretion to fix the selling prices, commissions and other matters necessary to effect the sales of the property.''

The declaration of trust further fixes the conditions upon which the trustee will execute and deliver deeds to purchasers of lots in said trust, and the manner in which the proceeds of such sale shall be applied. It also provides for

a sale of said tract of land upon the default of the beneficiaries to pay the interest or principal of said promissory note as the same shall fall due, or upon the default of said beneficiaries to comply with other requirements of said declaration of trust on their part to be performed.

After the final execution and delivery of said deed, the declaration of trust and assignment as above related, the bank paid out from the remainder of said sum of $75,000 loan in its hands various sums of money, so that the total amount of disbursements made by the bank on account of said loan was $67,909.31. These disbursements, made by the bank subsequent to the execution and delivery of said deed and declaration of trust, were made, so the bank claims, in accordance with the terms of the declaration of trust and, therefore, constituted a part of the loan secured by said trust deed and declaration of trust. The plan to subdivide some 410 acres of said land and sell the same in small tracts, at least in the manner it was attempted to be carried out by the parties hereto, proved a failure. No sales were made of any of said lands. The Etcheverrys defaulted in their interest due the bank, and also in their interest due plaintiffs. In fact, only one installment of interest was paid on the indebtedness due the bank and that due plaintiffs. By reason of this default in the payment of the interest on the indebtedness due the bank, said bank on March 14, 1930, filed in the office of the county recorder of San Diego a notice of breach or default and of election to sell said real property under said declaration of trust. Before said sale could take place, however, and on June 24, 1930, the plaintiffs commenced this action. In the prayer of their complaint they ask, among other things, that the bank be removed as trustee of said trust property and for the appointment of a disinterested trustee to carry out the powers provided in said declaration of trust and in the agreement between said plaintiffs and the officers of said bank; that an accounting be made by said bank of the proceeds of said $75,000 loan, and that the trustee be restrained from making any sale of said trust property under said declaration of trust until said accounting shall be had. A temporary injunction was applied for restraining said sale, but it was denied by the trial court. The bank, as trustee, after notice duly given and proceedings had, sold said trust property on

July 28, 1931, to the defendant First Securities Company for the sum of $90,449.82. Thereafter and on December 10, 1930, this action came on for trial and resulted in a judgment in favor of the defendants, wherein it was adjudged that plaintiffs take nothing by reason of this action and that defendants recover their costs. From this judgment said plaintiffs appealed under the alternative method provided for in section 953a of the Code of Civil Procedure. Since taking said appeal the plaintiff Walter Eden has died, and the said E. J. Miller as the executor of the last will of Walter Eden, deceased, has been substituted in his stead as one of the plaintiffs and appellants.

Two main points are made by appellants on this appeal, and to state them in appellants' own language they are:

"First: That we should have been permitted to show the preliminary oral contract between appellants, on the one part, and the bank and the Etcheverrys, on the other part, and it was error in the lower court to strike out all of plaintiffs' evidence in that regard.

"Second: That, aside from the oral contract to immediately subdivide and sell the ranch in small tracts, the bank, as trustee, violated its trust in spending the $26,500 trust fund contrary to the express conditions of the trust instrument."

We will give consideration to these two points in the above order, and then take up some of the minor points relied upon by the appellants in their briefs.

First: In considering the first main point made by appellants, our attention is called to paragraph XIII of plaintiffs' complaint wherein it is alleged that at the time of the creation of said trust said bank promised plaintiffs "that it would develop water on, and subdivide and make sale of, said land, such development of water if done and performed as agreed, would have greatly enhanced the value of said land and it would have thereupon sold in parcels of 5, 10, and 20 acres each, at a much greater sum of money than needed to pay and discharge said indebtedness to said Bank, and to the plaintiffs . . . ; but plaintiffs allege that said land has not been subdivided nor sold by said Etcheverrys nor the said bank." This allegation is followed by further allegations to the effect that the land and the improvements thereon have been neglected, with the result

that the value of said land has so depreciated that it is impossible to sell the same for an amount sufficient to pay said indebtedness. These allegations of the complaint are denied by the defendants. During the trial the appellants sought to prove that the bank had agreed, in case the Etcheverrys failed to put on a successful selling campaign to dispose of said land after its subdivision in smaller tracts, to put on its own selling agency, subdivide the land and sell the land and liquidate the indebtedness due plaintiffs as well as that due the bank. It is conceded that no such agreement on the part of the bank is contained in any of the written instruments above referred to as having been executed and delivered for the purpose of creating said trust. Plaintiffs sought to prove this agreement on the part of the bank by the introduction of the correspondence which passed between them and the bank, and by the oral testimony of the plaintiffs that the bank had made oral promises to that effect. This evidence was objected to by the defendants, but was tentatively admitted by the court, subject to being stricken out later on motion in case the court should eventually decide that it was incompetent. At the close of the evidence such motion was made by the defendants, and thereupon the court granted said motion, and struck out all of said evidence on the ground that the written instruments, consisting of the grant deed from the Etcheverrys to the bank, the declaration of trust of the bank in favor of the Etcheverrys, and the assignment by the latter to the plaintiffs of their interest in the trust property, constituted the final and complete agreement of the parties, and that, therefore, under section 1625 of the Civil Code, it superseded all prior negotiations and stipulations of the parties thereto.

As noted above, the declaration of trust provides that the bank or trustee reserves the right, in case the sales agency of the Etcheverrys have not produced sufficient sales to satisfy the trustee, to cancel any such agency and to appoint another agent or agencies to sell said property. While the power is reserved to the bank to set up a sales agency of its own to dispose of said lands, as stated before, there is no obligation of that nature imposed on the bank by said declaration of trust. Furthermore, we fail to find in any of the correspondence passing between the bank and the

appellants prior to the execution of the trust documents, any statement or promise that could be construed into an agreement on the part of the bank to undertake the sale of said lands in case of the failure of the Etcheverrys to do so. The only evidence supporting any such claim is found in the oral testimony of witnesses produced on behalf of the plaintiffs. In passing, it might be said that there was equally positive testimony on behalf of the defendants that no such promise or agreement, oral or written, had ever been made by the bank or any of its officers or agents. While these considerations may not affect the legal question involving the competency of the evidence which was stricken out by the court, they do have some bearing upon the question as to whether there was an antecedent contract between the plaintiffs and defendants whereby the latter agreed to put on a selling campaign for the purpose of disposing of said land in smaller tracts, in case the Etcheverrys were not successful in selling the same. But returning to the question as to whether the court erred in striking out the evidence of the prior negotiations and conversations of the parties, we think the trial court was correct in striking out said evidence. These prior negotiations and stipulations were all superseded by the written documents of the parties subsequently executed which purported to and did contain in full the agreement of the parties. It will be noted that the appellants expressly and in writing agreed to and approved, ratified, and confirmed not only the assignment by the Etcheverrys to appellants of the interest of the Etcheverrys in the trust but the declaration of trust itself in all particulars. No claim is made that the declaration of trust is in any way uncertain or ambiguous as to the obligations it imposed upon the bank. Neither do the appellants contend that they were not perfectly familiar with the terms of the declaration of trust at the time of their written approval thereof. They were each experienced lawyers, and it must be assumed that they understood perfectly the legal effect of all the documents which they had executed or to which they had given their assent and approval. Under these facts and circumstances the court correctly and properly struck out all evidence of plaintiffs as to any prior or preliminary oral contract between them and the officials of

the bank, or between the Etcheverrys and plaintiffs, or defendants, or either of them.

Plaintiffs make the further contention that said evidence was admissible to prove an antecedent contract between plaintiffs and the bank whereby the bank promised to put on a selling campaign to dispose of said land in case of the failure of the Etcheverrys to do so. There is no merit in this contention. The correspondence between the plaintiffs and the officials of the bank, and particularly the letters from the plaintiffs wherein they set forth the conditions upon which the satisfactions of their four judgments against the Etcheverrys were to be delivered, expressly refers to the terms to be incorporated in the declaration of trust, which was later executed in the manner stated above, and this correspondence plainly shows that these satisfactions of judgment were to be delivered only as a part of the plan agreed upon by all the parties hereto and which was to culminate in the execution and delivery of said declaration of trust. There is nothing in the oral evidence, which the court struck out, which would indicate any different intent on plaintiffs' part. Plaintiffs, therefore, have no legal grounds to complain of the action of the court in striking out said evidence. Besides, as we have stated above, this evidence was directly contradicted by the bank officials, and the court found in accordance with the defendants' evidence.

Second: The second main point relied upon by appellants is that the bank as trustee violated its trust in spending the $26,500 contrary to the express conditions of the trust instruments. The trust instrument, as we have seen, provides that after the bank shall have expended some $49,000 in the discharge of liens on said real property and in the payment of certain outstanding notes, leaving $26,000 in its hands, it shall disburse a portion of said amount in surveying 410 acres of said land, in constructing roads and installing a water system for said subdivision, in installing a pipe-line and in the erection of an addition to the building upon said property. After paying for these improvements on the property, there would be left $16,500 for the development of two or more wells and equipping the same for the purpose of placing additional acreage under irrigation.

It is obvious to anyone that it was contemplated by all the parties to the trust thus created, including the plaintiffs, that portions of the entire tract of land therein embraced would be subdivided into smaller tracts, water developed, and a water system installed for said subdivision, and that these smaller tracts would be sold, at least at the beginning, by and through the Etcheverrys. Accordingly and immediately after the trust was finally completed, the parties thereto undertook the development of the trust property by subdividing the same, laying out roads therein, and the installing of a water system for said subdivision. A selling campaign was put on by the Etcheverrys and a small building was erected upon the property in which to carry on their operations. The expense of these improvements was paid for by the bank from the trust funds remaining in its hands as shown above. At the trial a complete account of all these expenditures was rendered by the bank. Plaintiffs then and now claim that many of these expenditures were unauthorized by the declaration of trust. They make specific objection to the item of $10,097.22 for installing a water system, and to the expenditure of something over $1,000 for a building on the trust property. The declaration of trust provided that there should be spent approximately $5,000 for a water system and an additional $1,000 for a pipe-line from the present pumping system and $1,000 for an addition to the present building on the trust property. The item of $10,097.22 spent by the bank for the installation of the water system exceeds the amounts which the bank was authorized to spend by something over $4,000. It is contended by appellants that in making this over-expenditure the bank violated its trust. It will be observed in the first place that the amounts to be expended by the bank for the designated purposes were only ''approximately'' fixed in the declaration of trust. All the parties understood that it was not practicable to fix definitely the amount to be expended in making the various improvements contemplated by them. This would be particularly true regarding the installation of a water system upon the property. It is quite evident from the evidence in the case that all water which was to supply said lands was to be developed thereon by means of wells drilled upon the property. While an overpayment of

$4,000 seems large, and ordinarily would not be held to be within the terms of said trust instrument, under the facts and circumstances shown in the instant case we think it should be sustained. In the first place, as we have seen, the amount to be expended was only approximately stated in the declaration of trust. Then there is no showing that the total amount expended was not paid out in good faith, and that it was not necessary for the development of an adequate water system for the tract. An adequate water system was absolutely essential for the success of the subdivision project. Without it the whole scheme would be a failure. Finally these expenditures, as were all expenditures made by the bank under the trust, were made at the instance, request and approval of the Etcheverrys, the beneficiaries named in the trust. It is true that plaintiffs held an assignment of the beneficiaries' interest in the trust, but this assignment was only as security for the payment of the note held by them against the beneficiaries. Plaintiffs did not assume under their assignment to take charge of the trust property nor to direct the improvements which were being made thereon. They left these matters entirely to the bank and the beneficiaries, and so long as the bank and the beneficiaries were acting in good faith and for the best interest of all those interested in the trust, we think that plaintiffs have no legal or just cause to complain. In this connection it may be stated that in no instance while these improvements were being made did the plaintiffs make any objection to the manner in which the work was being carried on or to the amount of the expenditures incurred therefor, nor did they make any inquiry regarding any of these matters. After the money has been spent and the project has proven a failure, it is rather late for the plaintiffs to raise an objection to that which they seemingly, if they did not actually, acquiesce in. But, disregarding any acquiescence on the part of the plaintiffs in this expenditure by the bank for the installation of said water system, we are of the opinion that as this money was paid out with the consent of the beneficiaries for the purpose of carrying out the express purpose of the trust, its payment was valid and legal, although the amount thereof exceeded substantially the amount approximately fixed by the declaration of trust. What we have said in regard to the water system also applies to the

$1,000 or over, paid for the erection of a building on the trust property used as a sales office. Such a building was necessary in order that a selling campaign, which was provided for in the declaration of trust, might be carried on. Instead of expending the sum of $1,000 for an addition to one of the present buildings on the property, it was decided to spend this amount in an office building in which would be conducted said selling campaign. As this building was constructed with the knowledge and consent of both the trustee and the beneficiaries, and for the better administration of the trust, we cannot say that the trustee was guilty of any violation of the trust in expending some of the trust fund in its construction.

Other items of expenditure are objected to by the plaintiffs. They are small in amounts and in the aggregate do not make a formidable sum. They comprise principally expenditures for incidental matters, which perhaps were not foreseen at the time the trust was created, but which were necessary for the proper execution of the trust. They were all incurred by the beneficiaries in their endeavor to improve, subdivide, and sell the trust property. Their payment by the trustee did no violence to the terms of the trust. In concluding this subject, it might be well to call attention to the fact that the whole of said sum of $26,500 was not expended by the bank. In fact, the trustee had only $26,000 in its hands after paying out said sum of $49,000. At the time of its foreclosure of the trust, the amount due on the principal of said promissory note was only $67,909.31. It therefore had on hand the difference between said sum and the sum of $75,000, or over $7,000. But long before the institution of said foreclosure proceedings, it was apparent to all that the subdivision plan originally contemplated by the parties could not be successfully carried out, principally for the reason that there was no demand for property of the kind and character covered by the trust. Practically no sales were made, and it would have been a waste of money to attempt to continue the trust. Only one quarterly installment of interest had been paid on the indebtedness to the bank and on the indebtedness to the plaintiffs. The trust was created and the promissory notes of the bank and of the plaintiffs were executed on January 24, 1927. The bank did not give notice of default until March 14,

1930, almost three years after the first default in the interest payment. Up to that time the bank had advanced from its own funds over $3,000 for the payment of taxes on the trust property and insurance of the buildings thereon. With the trust in this condition there was nothing that the bank could do in order to protect its interest therein, other than to foreclose the trust under the power given it by the declaration of trust.

In addition to the two main points just discussed, the appellants advance additional grounds for the reversal of the judgment. Among these is the claim that the bank had not accounted for all the proceeds of sale received by it on the sale of said trust property at its foreclosure sale. The property was sold on foreclosure for $90,449.82. This question was not raised by the pleadings. It is not covered by any finding of fact, and appellants have not indicated in their briefs any evidence bearing upon the subject. We must, therefore, hold that appellants have failed to sustain this point. When we come to compute the interest on the indebtedness due, the amount paid for taxes and insurance, the trustee's fees, the expenses of foreclosure, and add these items to the principal sum due, the total apparently was not far from the amount for which the property was sold at the foreclosure sale. If there was any difference the plaintiffs have failed to show that fact.

A further claim is made that the bank until it had expended the full amount of said sum of $75,000 for the purposes set forth in said declaration of trust, had no right to "close out its trustors, among whom were the plaintiffs". In support of this contention is cited the case of *Savings Bank of Southern California* v. *Asbury*, 117 Cal. 96 [48 Pac. 1081, 1083]. In this case the bank agreed to loan to the defendants $30,000. It loaned them $12,500 and refused to loan them the remaining $17,500. No interest was paid on said sum of $12,500, and the bank sought to foreclose its mortgage, claiming there was a default in the payment of interest. The defendants filed an answer setting up the bank's failure to carry out its agreement to loan the full $30,000. The trial court found the answer to be true and held that "the plaintiff could not enforce the payment of the note against them or foreclose the mortgage therefor, so long as it retained in its hands a portion of the money so

agreed to be advanced and refused to perform its part of the agreement''. It needs but little discussion to show the inapplicability of this authority to the facts in the present case. The plaintiff in that case had refused to comply with its agreement to loan the full sum agreed upon. It was indebted to the defendants instead of the defendants being indebted to it. It could not collect from the defendants because there was nothing due from the defendants. In the present case, while the bank at the time it instituted foreclosure proceedings had in its hands a portion of the original loan, this sum so retained by it was held for a particular purpose. It did not owe this sum to the beneficiaries or to any other person, but had agreed to impound said amount ''for the development of two or more wells'', etc. We have already seen that the scheme to subdivide the first 410 acres was a failure. No effort was made by the Etcheverrys, or by anybody else, to develop any wells for an additional 400 acres of the trust property. No demand was made on the bank for the expenditure of this money in order to carry on said development, and consequently the bank never refused to pay out said money for that purpose. There was, therefore, no default on the part of the bank which would prevent it from enforcing its rights under the trust.

During the trial the defendants offered in evidence as their exhibit K, eighty-six vouchers which purported to cover all sums of money paid out by the bank under said trust. All of these, with the possible exception of one or two, were approved by the Etcheverrys. This offer was objected to by the plaintiffs, but their objection was overruled by the court and the vouchers were admitted in evidence. It is now claimed that the court erred to the prejudice of the appellants in admitting in evidence said vouchers. We are unable to perceive how the appellants sustained any injury by the action of the court in admitting this evidence. Witnesses, employees of the bank, had previously testified to the work that had been done on the trust property, and these vouchers were produced by the bank from its regular files and were shown to have been paid in the regular course of business. As they, with the slight exceptions mentioned, had the approval of the Etcheverrys, we think they were competent evidence to prove the expenditures shown therein.

■ The claims of appellants that they received no consideration for the release of their judgments, and that the bank was guilty of fraud in the procurement of plaintiffs' assent to said trust transaction, and was also guilty of gross negligence in administering said trust, have no foundation in the facts in this case, and we deem it unnecessary to give any detailed discussion to these matters.

We find no error in the record and are of the opinion that the judgment should be affirmed, and it is so ordered.

Langdon, J., Shenk, J., Thompson, J., Preston, J., Waste, C. J., and Seawell, J., concurred. ·

Rehearing denied.